# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                               Plaintiff,<br><br>   v.<br><br>JOSE NORBERTO GODINEZ,<br><br>                             Defendant. | Case No. 16-cr-02871-BAS<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br>**(ECF No. 88)** |

Defendant Jose Norberto Godinez, who is 40 years old, files a motion to reduce his sentence from a ten-year mandatory minimum to a time served (approximately forty-four month) sentence in light of the risk he faces from COVID-19. (ECF No. 88 ("Motion").) The Government opposes (ECF No. 90 ("Opposition")), and Mr. Godinez replies (ECF No. 92). For the reasons stated below, the Court **GRANTS** the Motion.

**I.    BACKGROUND**

From March 2015 to March 2016, Mr. Godinez sold large quantities of cocaine and methamphetamine to a monitored confidential source. (ECF No. 65 ("Pre-sentence Report ('PSR')") ¶¶ 5–14.) Mr. Godinez admitted to the Probation Officer, post plea, that he began selling narcotics in 2013 or 2014. (*Id.* ¶ 21.) He reported that he was in good physical health (*id.* ¶ 59), but that he had problems with alcohol and cocaine (*id.* ¶ 65).

At Mr. Godinez's sentencing, the Court made it clear that, after considering the 18 U.S.C. § 3553(a) factors, it would have sentenced him to less than the mandatory minimum sentence of ten years, but was prevented from doing so by law. (ECF No. 93, at 10.) Although Mr. Godinez had a criminal history category of III, the Court found it was over-representative because Mr. Godinez's past criminal convictions were largely traffic related (driving on a suspended license). (*Id.* at 7.) Furthermore, at sidebar, the Government indicated that it believed Mr. Godinez's role was similar to his co-defendant Mr. Betancourt. (Government: "[T]here was more parity between the two [defendants] than we realized when we charged the case . . . .") The Court sentenced the co-defendant Mr. Betancourt to only sixty months in custody. (ECF No. 77.) Although the amount of drugs involved was substantial, this was Mr. Godinez's first felony conviction and his first exposure to any kind of significant custodial sanction. (PSR ¶ 104.) Mr. Godinez admitted that he had an alcohol and cocaine problem and sought to participate in the Bureau of Prisons ("BOP")'s RDAP program for substance abuse treatment. (*Id.* ¶ 65.)

During the forty-four months that Mr. Godinez has been in custody, he has completed the RDAP program and completed his GED. (ECF No. 88-5, Exh. 4.) He is currently being housed at a minimum security facility at FCI Florence.

FCI Florence currently reports two COVID-19 cases among inmates and five cases among staff (three of which cases are reported as "recovered"). BOP, Covid-19 Cases, http://www.bop.gov/coronavirus (last visited August 5, 2020).[1] Despite reporting to Probation that he was in good physical health, defense counsel now argues that Mr. Godinez is at risk if he were to contract COVID-19 because: (1) he "suffered a severe case of pneumonia about ten years ago, which left him with lung scarring and an increased susceptibility to future illnesses" (Motion, at 4); (2) he has a latent tuberculosis infection

---

[1] These numbers have been changing on a regular basis since Mr. Godinez first filed his Motion. At the time he filed the Motion, there were no cases at Florence FCI. Last week, as the Court began preparing this Order, two staff members were listed as infected. Now, as of August 5, 2020, the BOP reports that there are two inmates infected and two staff infected, with three other staff members listed as "recovered."

(ECF Nos. 88-6 to 88-9, Exhs. 5–7); (3) he is obese with a body mass index of 31.6; (4) he has a history of smoking; (5) he has high blood pressure and high cholesterol; and (6) he previously had the flu while he was in custody.

Mr. Godinez sought compassionate release from the Warden at the facility where he is being housed on May 7, 2020. (Motion, Exh. 2.) The Warden denied the request on May 19, 2020. (Motion, Exh. 3.) Mr. Godinez provides no evidence that he appealed this denial.

## II. ANALYSIS

### A. Exhaustion of Administrative Remedies

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825–26 (2010). A narrow exception, compassionate release, allows a court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

However, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*. In other words, Mr. Godinez must fully exhaust his administrative remedies from the Warden of the facility where he is being housed before he turns to the Court for relief.

"Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the 'opportunity to correct [their] own mistakes.'" *United States v. Ng Lap Seng*, __ F. Supp. 3d __, 2020 WL 2301202, at *6 (S.D.N.Y. 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). "Second, it promotes efficiency since claims 'generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.'" *Id*. This Court agrees with the vast majority of courts in this circuit that have found such an exhaustion to be mandatory. *See, e.g.*, *United States v. Stanard*, No. CR 16-320-RSM, 2020 WL 1987072, at *4 (W.D. Wash. Apr. 27,

2020); *United States v. Otero*, No. 17-cr-879-JAH, 2020 WL 1912216, at *3 (S.D. Cal. Apr. 20, 2020); *United States v. Allison*, No. CR 16-5207-RBL, 2020 WL 1904047, at *2 (W.D. Wash. Apr. 17, 2020); *United States v. Fuller*, No. CR 17-0324 JLR, 2020 WL 1847751, at *2 (W.D. Wash. Apr. 13, 2020); *United States .v Aguila,* No. 2:16-0046-TLM, 2020 WL 1812159, at *1 (E.D. Cal. Apr. 9, 2020); *United States v. Carver*, No. 4:19-CR-06044-SMJ, 2020 WL 1604968, at *1 (E.D. Wash. Apr. 1, 2020).

Mr. Godinez claims he exhausted his administrative remedies because he sought compassionate release from the Warden on May 7, 2020, and more than 30 days have passed since that request. He ignores the Warden's denial on May 18, 2020, and he provides no information that he sought appeal of this denial.

In *United States v. Weidenhamer*, No. CR-16-01072-001-PHX-ROS, 2020 WL 6050264, at *2–4 (D. Ariz. Nov. 8, 2019), the District Court in Arizona analyzed the two interpretations of "the lapse of 30 days" language in Section 3582. In the first interpretation, urged in this case, the simple passage of 30 days after making the request to the Warden is sufficient to constitute exhaustion of administrative remedies. Indeed, Congress might have decided against requiring every defendant to pursue a potentially lengthy administrative appeal process when talking about the possibility of imminent death.

However, this interpretation would make the first requirement, that a petitioner "fully exhaust[ ] all administrative remedies," largely surplusage. The full exhaustion is unlikely to occur in just 30 days. Therefore, all that is practically required under the first interpretation is that a petitioner file a request with the Warden and wait 30 days. No further exhaustion of administrative remedies would be necessary. Furthermore, the word "lapse," as noted by the Arizona District Court, "often carries with it a connotation of a failure to act." *Id.* at *3. Thus, under this second interpretation, a defendant could "go directly to the district court if a warden is not responsive to a request but, if a warden *does* act within 30 days, the defendant would be required to pursue an administrative appeal." *Id.* This Court agrees with *Weidenhamer* that the second interpretation makes the most

sense. The purpose of the "lapse of 30 days" language is to give a defendant an alternative if attempts to exhaust administrative remedies appear futile.

Therefore, Mr. Godinez has failed to fully exhaust his administrative remedies as required under Section 3582. Although this Court finds that such exhaustion is mandatory, the Government may waive the exhaustion requirement by asking the Court to consider the substantive merits of a defendant's motion. *Ng Lap Seng*, at \*7. The Government, in its Opposition, submits on the issue of exhaustion and addresses the substantive issues. Therefore, the Court finds the Government has waived the exhaustion requirement in this case.

### B. Extraordinary and Compelling Reasons

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, No. 3:13-cr-444-BR, 2020 WL 1673440, at \*3 (D. Or. April 6, 2020).

Although the facility where Mr. Godinez is being held currently only reports seven cases of COVID-19: five among staff (three of whom have recovered) and two among inmates, it is significant that in the two weeks that this Motion has been pending, the number of infections at this facility has gone from none to seven. Clearly, preventing the spread of coronavirus in prison facilities has been a challenge and, in many facilities, a losing battle. The fact that the number is increasing at Florence FCI does not bode well for the future.

The Court, however, agrees with the Government that the simple fact that COVID-19 exists at the facility does not constitute "extraordinary and compelling reasons." Nonetheless, the Government agrees that "[i]f an inmate has a chronic medical condition that has been identified by the CDC as elevating an inmate's risk of becoming seriously ill

from COVID-19, that condition could satisfy the standard of 'extraordinary and compelling reasons.'" (Motion, at 18.) The Court agrees and, thus, must analyze Mr. Godinez's medical conditions.

Although COVID-19 is still being tested by the experts, there is a general consensus that those with latent tuberculosis, obesity with a BMI over 30, a history of smoking and high blood pressure, as well as pulmonary fibrosis (having damaged or scarred lung tissues) might face a risk of severe illness if infected with COVID-19. *See* CDC, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated July 17, 2020) (having a BMI of 30 or above does increase the risk of severe illness from COVID-19; being a former cigarette smoker, having high blood pressure, and pulmonary fibrosis might create a risk of severe illness if infected with COVID-19); WHO, Tuberculosis and COVID-19, www.who.int/teams/global-tuberculosis-programme/covid-19 (last visited Aug. 5, 2020) ("While experience on COVID-19 infections in TB patients remains limited, it is anticipated that people ill with both TB and COVID-19 may have poorer treatment outcomes, particularly if TB treatment is interrupted.").

Although Mr. Godinez has been unable to substantiate his claim of pulmonary fibrosis (*see* ECF No. 94), he claims he had pneumonia ten years ago resulting in lung scarring. Mr. Godinez also provides documentation that his BMI is 31.6 and that he has latent tuberculosis. (ECF Nos. 88-6 to 88-7.) Mr. Godinez also reported to the medical authorities at Florence FCI that he was a "former smoker." (ECF No. 88-8, Exh. 7 at 14.)

As much as the Court is able to ascertain from the latest reports from the CDC and the World Health Organization, it appears Mr. Godinez has at least one chronic medical condition that has been identified as elevating his risk of becoming seriously ill from COVID-19. Given the rapidly increasing numbers of reported cases of COVID-19 at FCI Florence, the Court finds Mr. Godinez has shown "extraordinary and compelling reasons" for his release.

### C.  The Section 3553 Factors

This was Mr. Godinez's first felony conviction and the first time he was facing a significant custodial sanction. Despite the large amount of drugs involved, the Court made it clear it felt that a sentence below the mandatory minimum would be an appropriate sentence for Mr. Godinez. (ECF No. 93, at 10.) The Government indicated that Mr. Godinez's role was less than his co-defendant Mr. Betancourt, who was only sentenced to sixty months in custody. Mr. Godinez has already served almost forty-four months of his sentence, not an insignificant amount of time.

Additionally, at the time he was sentenced, Mr. Godinez admitted that his involvement in the conspiracy was, in part, due to his alcohol and cocaine addiction. He has now completed the RDAP program in custody and has completed his GED, both of which reduce his risk of recidivism and any danger he might pose to the public.

Considering all the factors in this case, the Court finds the Section 3553 factors also support granting Mr. Godinez's motion for compassionate release.

## III.  CONCLUSION

Because of "extraordinary and compelling reasons," the Court **GRANTS** Mr. Godinez's Motion to Reduce his Sentence (ECF No. 88). The Court reduces Mr. Godinez's sentence to a time served sentence. The term and conditions of supervised release remain the same. This order is stayed for up to fourteen days, for the verification of Defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure Defendant's safe release. Defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for Defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure Defendant's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

**IT IS SO ORDERED.**

**DATED: August 5, 2020**

Hon. Cynthia Bashant
United States District Judge